UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**Connie C. Poarch for S. Y.,**

                          **Plaintiff,**

                          **-v-**                         **3:11-CV-695**

**Carolyn W. Colvin, Acting Commissioner of Social Security, in place of Michael Astrue,**

                          **Defendant.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Foster Law Office
Jonathan P. Foster, Esq., of counsel
2268 Elmira Street
P.O. Box 400
Sayre, Pennsylvania 18840
Attorney for Plaintiff

Hon. Richard S. Hartunian, United States Attorney
Sixtina Fernandez, Esq., Special Assistant United States Attorney
Social Security Administration
Office of Regional General Counsel, Region II
26 Federal Plaza - Room 3904
New York, New York 10278
Attorney for Defendant

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

On November 12, 2008, plaintiff filed an application for Supplemental Security Income on behalf of S.Y., her daughter, born June 11, 1999. S.Y., who was born prematurely, has cerebral palsy and asthma. After the initial denial of the claim, plaintiff requested a hearing, which was held on April 27, 2010, before Administrative Law Judge ("ALJ") Richard Zack. Plaintiff and S.Y., who was represented by counsel, both testified at the hearing. After the

hearing, the ALJ held the record open for additional medical evidence, which was received and considered. On July 13, 2010, the ALJ issued a decision holding that S.Y. had the severe medical impairments of cerebral palsy and asthma, but that the impairments did not meet or qualify as medically or functionally equivalent to a listed disability. Thus, the ALJ held that S.Y. was not disabled and not eligible for SSI for the period November 12, 2008 through July 13, 2010. On April 27, 2011, the Appeals Council denied the request to review, and the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").

On October 22, 2010, after the ALJ's decision but prior to the Appeals Council's decision, plaintiff filed a subsequent application for SSI on behalf of S.Y. Thereafter, plaintiff submitted to the Commissioner a report dated July 7, 2011 from University of Rochester Medical Center ("URMC"). On January 5, 2012, the Commissioner denied plaintiff's application to reopen the subject case based on this report, noting that the URMC report "is about a later time" and thus does not affect the decision about whether S.Y. was disabled during the time period covered by the subject application. The Commissioner returned the URMC report to plaintiff to use in support of the October 22, 2010 application. On April 23, 2012, ALJ John P. Ramos issued a favorable decision on the subsequent application, finding S.Y. disabled as of October 22, 2010.

Pursuant to 42 U.S.C. § 405(g), plaintiff seeks judicial review of the subject determination that S.Y. was not disabled and therefore not eligible for SSI for the period from November 12, 2008 through July 13, 2010. She asks the Court to reverse the Commissioner's decision denying benefits and to remand the matter for payment of benefits, or, in the alternative, to remand the matter to the ALJ for additional proceedings. As set forth below, the Court finds that S.Y. was disabled for purposes of the Social Security Act from November 12, 2008 through July 13, 2010,

grants plaintiff's motion for judgment on the pleadings (Dkt. No. 13), denies defendant's motion for judgment on the pleadings (Dkt. No. 14), and remands for calculation of benefits.

## APPLICABLE LAW - GENERALLY

Under 42 U.S.C. § 1382c(a)(3)(C)(i), an individual under the age of 18 will be considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." The regulations establish a three-step evaluative process for determining whether a child meets the statutory definition of disability. *See* 20 C.F.R. § 416.924, "How we determine disability for children." First, a child who is doing substantial gainful activity is not disabled. 20 C.F.R. § 416.924(b). Second, a child who does not have an impairment or combination of impairments that is severe is not disabled. 20 C.F.R. § 416.924(c). Third, where, as here, the child was not doing substantial gainful activity and had one or more severe impairments during the time period in issue, the question is whether the impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 ("listed impairment"). 20 C.F.R. § 416.924(a). If an impairment is found to meet, medically equal, or functionally equal a listed disability, and the twelve-month durational requirement is satisfied, the child will be deemed disabled. 20 C.F.R. § 416.924(a),(d)(1).

Analysis of functionality is informed by consideration of how a child functions in six main areas, or "domains." 20 C.F.R. § 416.926a(b)(1). The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The domains are: (1) acquiring and using information; (2) attending and completing tasks; (3)

interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

A finding of functional equivalence to a listed impairment may be based on a finding of a "marked" limitation in any two of the six domains, or an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a). A "marked" limitation means an impairment that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An extreme limitation is one that interferes "very seriously" with a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i).

The Court "may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). The Commissioner's findings as to any fact, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shaw*, 221 F.3d at 131 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

## THE ALJ'S DECISION

Here, it is undisputed that S.Y. was not doing substantial gainful activity, that she had the

severe impairments of cerebral palsy and asthma, and that as a result of her cerebral palsy, S.Y. has some degree of hemiplegia, which is defined as "paralysis of one side of the body," *Dorland's Illustrated Medical Dictionary* 848 (31st ed. 2007); *Stedmans Medical Dictionary* (27th ed. 2000), or "paralysis of an upper and lower extremity on one side of the body," *Attorneys Medical Deskbook*, § 24:6 (4th Database 2013). The ALJ found that S.Y. did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments; plaintiff does not challenge this finding. On this appeal, plaintiff challenges the ALJ's determination that S.Y. did not have an impairment or combination of impairments that functionally equaled one or more of the listed impairments. In reaching this determination, the ALJ evaluated the six functional equivalence domains set forth in 20 C.F.R. § 416.926a(b)(1). He concluded as follows:

> (1) S.Y. has less than marked limitation in acquiring and using information;
> (2) S.Y. has less than marked limitation in attending and completing tasks;
> (3) S.Y. has marked limitation in interacting and relating with others;
> (4) S.Y. has less than marked limitation in moving about and manipulating objects;
> (5) S.Y. has no limitation in caring for herself; and
> (6) S.Y. has less than marked limitation in health and physical well-being.

On this appeal, the Commissioner does not challenge ALJ's finding that S.Y. has a marked limitation in the domain of interacting and relating with others. Plaintiff argues that S.Y. has a marked limitation in at least one additional domain, and thus is disabled due to marked limitations in two of the six domains. *See* 20 C.F.R. § 416.926a(a). Specifically, plaintiff challenges the ALJ's determinations that S.Y. had less than marked limitations in the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) moving and manipulating objects; and (4) health and well-being.

-5-

As set forth below, the Court finds that the record conclusively establishes that S.Y. had a marked limitation in the domain of moving about and manipulating objects. Therefore, she had marked limitations in two domains and was disabled for purposes of the Social Security Act. *See* 20 C.F.R. § 416.926a(a). Because the strength of the evidence regarding the domain of moving about and manipulating objects is the determinative issue here, the Court limits its decision to this issue.

### MOVING ABOUT AND MANIPULATING OBJECTS - REGULATIONS AND ADMINISTRATIVE RECORD

Regarding the domain of moving about and manipulating objects, the ALJ wrote: "The claimant's cerebral palsy with spastic diplegia produces physical effects that cause limitations in moving about and manipulating objects." Without further discussion, he concluded that S.Y. had a less than marked limitation in the domain.

Specifically with respect to evaluating the domain of moving about and manipulating objects, the regulations provide:

> School-age children (age 6 to attainment of age 12). As a school-age child, your developing gross motor skills should let you move at an efficient pace about your school, home, and neighborhood. Your increasing strength and coordination should expand your ability to enjoy a variety of physical activities, such as running and jumping, and throwing, kicking, catching and hitting balls in informal play or organized sports. Your developing fine motor skills should enable you to do things like use many kitchen and household tools independently, use scissors, and write.

20 C.F.R. § 416.926a(j)(2)(iv). The regulations include examples as follows:

> Examples of limited functioning in moving about and manipulating objects. The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage; e.g., an example below may describe a limitation in an

-6-

older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.

> (i) You experience muscle weakness, joint stiffness, or sensory loss (e.g., spasticity, hypotonia, neuropathy, or paresthesia) that interferes with your motor activities (e.g., you unintentionally drop things).
> (ii) You have trouble climbing up and down stairs, or have jerky or disorganized locomotion or difficulty with your balance.
> (iii) You have difficulty coordinating gross motor movements (e.g., bending, kneeling, crawling, running, jumping rope, or riding a bike).
> (iv) You have difficulty with sequencing hand or finger movements.
> (v) You have difficulty with fine motor movement (e.g., gripping or grasping objects).
> (vi) You have poor eye-hand coordination when using a pencil or scissors.

20 C.F.R. § 416.926a(j)(3).

In evaluating a child's functioning in each domain, the Commissioner considers information that will help answer the following questions about whether the child's impairment affects his or her functioning and whether the child's activities are typical of other children the same age who do not have impairments:

> (i) What activities are you able to perform?
> (ii) What activities are you not able to perform?
> (iii) Which of your activities are limited or restricted compared to other children your age who do not have impairments?
> (iv) Where do you have difficulty with your activities – at home, in childcare, at school, or in the community?
> (v) Do you have difficulty independently initiating, sustaining, or completing activities?
> (vi) What kind of help do you need to do your activities, how much help do you need, and how often do you need it?

20 C.F.R. § 416.926a(b)(2).

The administrative record includes a Function Report completed by plaintiff, S.Y.'s mother, on December 1, 2008, stating that S.Y. (who was then nine years old and in third grade)

-7-

could not throw a ball, jump rope, use roller skates or roller blades, swim, use scissors, or dress/undress dolls or action figures. Plaintiff wrote that S.Y. "needs help to get herself dressed, brush her teeth and brush her hair." Plaintiff also reported that S.Y. cannot button clothes by herself, tie her shoelaces, take a bath or shower without help, brush her teeth, comb or brush her hair, or wash her hair by herself. On a separate Disability Report (undated but indicating that S.Y. was in third grade), plaintiff wrote:

> [S.Y.] was 3 months premature. She has Cerebral Palsy. She has had botox on her left leg to lengthen her heel cord. [S.Y.] has a hard time walking, she gets off balanced real easy. She wears braces at night on both feet. [S.Y.] is not able to do the activities that other kids her age can do. Such as climbing, jumping, etc.

In a third Disability Report completed sometime between February and July 2009, plaintiff reported that S.Y. "needs someone to assist her to take off dressing [*sic*], washing hair, brush teeth, put on shoes and tie shoes." She added that S.Y. "is getting frustrated with her lack of ability to keep up with her classmates."

At the April 27, 2010 hearing before the ALJ, S.Y. testified that she likes to swim but has a "hard time" swimming; that she likes to play sports, ride bikes, and play at parks; that after she ties her shoes "they always fall out because ... I don't tie it tight enough ... I don't tie it right"; that she can jump "but not that high"; that she cannot do jumping jacks; that sometimes the stairs make her "trip over" herself and she needs help or needs to hold on to the railing; that she has difficulty getting her shirt off over her head because "her hands just won't work right"; that she has difficulty buttoning her pants; and that she is unable to comb her hair and requires help from her mother "because I usually can't reach the back." S.Y. further stated that when she stands for a long time, her legs feel "really weak" as if they "want to ... drop to the ground." At the hearing

her attorney stated that there was a letter from S.Y.'s baseball coach saying that he had to change S.Y. into a different league; S.Y. explained she was in "Little League instructional" and that she was able to run around the bases but she "do[es] it slower than others." Regarding swimming, she explained:

> Q Okay. Have you had any problems – swimming – you said you tried to swim but you have a problem swimming?
> A Yeah, I do. I just, like, can't keep my balance, like, in the water with my feet up and kicking my feet and moving my hand – moving my arms.
> Q So you can't do everything at the same time?
> A No. It's like my legs and my hands are padding – are padding at different times.

On January 5, 2009, Douglas Hill, S.Y.'s third grade teacher, completed a Teacher's Questionnaire. The questionnaire requested the teacher to compare S.Y.'s functioning to that of same-aged children who did not have impairments. With respect to the domain of moving about and manipulating objects, the teacher was asked to address seven activities.[1] Mr. Hill reported that S.Y. had an "obvious" problem "moving [her] body from one place to another" and a "slight" problem "demonstrating strength, coordination [and] dexterity in activities or tasks." He wrote that S.Y. "has a noticeable slinking/jerky movement to her as she moves and runs"; that she "has learned to adjust pretty well but has some difficulty with coordination"; and that he "may have to tie her shoes or help her with her gloves." In other sections of the questionnaire, Mr. Hill noted

---

[1] The seven activities listed in the domain of moving about and manipulating objects are:
(1) Moving body from one place to another, e.g., standing, balancing, shifting weight, bending, kneeling, crouching, walking, running, jumping, climbing);
(2) Moving and manipulating things (e.g., pushing, pulling, lifting, carrying, transferring objects, coordinating eyes and hands to manipulate small objects);
(3) Demonstrating strength, coordination, dexterity in activities or tasks;
(4) Managing pace of physical activities or tasks;
(5) Showing a sense of body's location and movement in space;
(6) Integrating sensory input with motor output;
(7) Planning, remembering, executing controlled motor movements.

-9-

that S.Y.'s written work is "hurt somewhat by a physical disability to make letters quickly"; that she "has reduced physical stamina when exercising and can become short of breath"; and that "her leg will sometimes give out on her, but she is able to get back on her feet afterward." He also wrote: "The physical limitations seem to be the main part of [S.Y.'s] condition. It does not affect her ability to participate in everything at school, but some allowances may need to be made." Mr. Hill further reported that S.Y. had no problem with the remaining five activities.

Trisha Hughes, S.Y.'s fourth grade teacher, completed the Teacher Questionnaire on May 17, 2010. She reported that S.Y. had an "obvious" problem "moving [her] body from one place to another" and a slight problem "moving and manipulating things" and "demonstrating strength, coordination [and] dexterity in activities or tasks." Ms. Hughes wrote that S.Y. "has CP, which sometimes makes it difficult for her to run/move if she is hurting." She reported that S.Y. had no problem with the remaining four activities.

S.Y.'s medical records for the time period in question include progress notes for January 22, 2009 by William M. Mirenda, M.D. of the Orthopedic Department of Geisinger Medical Center showing a diagnosis including congenital hemiplegia and abnormality of gait, and stating:

> Doing well overall. Has night braces that are very poorly tolerated. Getting PT- therapist has expressed concerns about hip dysplasia.
> \*\*\*
> Gait exam shows very little impairment. Foot progression angle is straight. She has difficulty clearing toes on L.
> \*\*\*
> Assessment: Hemiplegic CP- excellent gait but difficulty clearing toes.
>
> Plan: The natural history of these issues were discussed at length with this family. I am not surprised she does not tolerate her night braces – I think they have provided what help they can. Ok to stop. Mom and Dad will continue stretching exercises. If difficulty clearing toes persists, she may benefit from dynamic brace.

On March 3, 2009, Henry C. Maguire, M.D., Director of Pediatric Neurology at Geisinger Medical Center, examined S.Y. and wrote:

> On examination today, she had some mild ankle tightness on the left, but I can dorsiflex passively to above 90 degrees. When walks, she postures slightly in the left arm with decreased arm swing. She had decreased rapid alternating movements in the left as opposed to the right hand. She can jump up in the air and rise from the floor without difficulty.
> ***
> She has very mild findings in the left arm and left leg. Tbere is no indication for orthotics . She will continue to be seen by a physical therapist.

Progress notes and clinic notes from Guthrie Clinic include a notation from Marie Kayton, M.D., who saw S.Y. on June 3, 2009 for bilateral ankle pain. Dr. Kayton wrote:

> SUBJECTIVE: 9-year-old female brought by dad and grandmother for b/l ankle pain R>L. [S.Y.] has C.P. And has recently moved to the area. She was getting private P.T. But then was told to go through the school. The school said that it is too late in the year. Hence no P.T. for a while. [S.Y.] is very active playing softball and being outside. Her ankles hurt more after being active. She says there is a hill that she rolls her ankles on a bit. At her last visit to ortho, they said she did not need to wear her braces, she was scheduled to f/u there next month though they have to reschedule it. No swelling or bruising noted, no acute trauma.
>
> OBJECTIVE:
> EXT:   B/l ankles, no swelling or bruising, points to R medial malleolus as source of usual pain.
> No pain on palpation today.  Increased tone in both ankles, but good range of motion.
> GAIT: Limp, right ankle rolls in more than left.
>
> ASSESSMENT: Ankle pain, likely just sprain/strain, no bony abnormalities.
>
> PLAN: Rest ankles more, stretch the ankles more.  Motrin PRN pain. Ankle braces for support while active. Refer to PT for improving range of motion. F/u with orthopedics as scheduled.

Dr. Mirenda examined S.Y. again on October 5, 2009, and wrote:

> Doing well overall. She remains active. Stretching gastrocs w/ theraband. Achy back pain for 3 mos. Increased w/ activity. She had a painful "pop" in

-11-

> her back several weeks ago.
> ***
> Plan: The natural history of these issues were discussed at length with this family. I think her back pain is the likely consequence of hamstring tightness. Mom will continue stretching exercises and emphasize hamstring work. If difficulty clearing toes persists, she may benefit from dynamic brace. Recheck in 4 mos.

Dr. Maguire examined S.Y. on May 7, 2010 and reported:

> The patient is a 10-year-old female with a history of a very mild left hemiplegia, She has had some problems with pain in her right ankle, She was seen by Orthopaedics and an orthotic is being ordered but she has not yet received it.
> ***
> In the office today, she walks with a very, very slight toe-down posture in the right leg. I can passively dorsiflex to above 110 degrees on the left. Her toe is equivocal on the left, downgoing on the right, She has some mild dystonic posturing in the left arm with stress gait. She has some deceased rapid alternating movements in the left hand.
> ***
> DISCHARGE DIAGNOSIS; Left hemiplegia.

The record also contains two Childhood Disability Evaluation Forms signed by nonexamining consultants. Both concluded that S.Y. had "less than marked" limitation in moving about and manipulating objects. The first, signed by Shakoora Omonuwa, M.D., is dated May 27, 2008, before the commencement of the time period in issue. The second signed by non-examining consultants physician Mark Bohn, M.D. and psychologist Anthony Goldieri, Ph.D., is dated February 11, 2009 to March 12, 2009.

### MOVING ABOUT AND MANIPULATING OBJECTS - DISCUSSION

S.Y. suffers hemiplegia (paralysis) on her left side due to cerebral palsy. According to S.Y.'s physicians, the hemiplegia is "mild." During the time period in question, S.Y. was able to attend school, ride her bike, play softball, and play in parks. The undisputed evidence also

establishes, however, that the cerebral palsy hampered her development of both gross and fine motor skills, thus seriously interfering with her ability to initiate, sustain, or complete activities both at home and at school. She had an "obvious" problem "moving [her] body from one place to another" and had "a noticeable slinking/jerky movement to her as she move[d] and [ran]." She got "off balance" easily and her leg sometimes "[gave] out on her" causing her to fall, although she "[was] able to get back on her feet afterward." She could not swim and had difficulty climbing stairs. If she stood for a long time, her legs felt "really weak" as if they "want to ... drop to the ground." Her condition sometimes made it "difficult for her to run/move if she [was] hurting." She also had "some difficulty with coordination" and could not throw a ball, jump rope, use roller skates or roller blades, use scissors, or dress/undress dolls or action figures. She needed assistance in buttoning her clothes, tying her shoelaces, putting on gloves, taking a bath or shower, brushing her teeth, and combing, brushing, and washing her hair. Her written schoolwork was "hurt somewhat by a physical disability to make letters quickly."

The medical evidence supports the conclusion that the above limitations regarding moving about and manipulating objects resulted from S.Y.'s medically determinable severe impairment of left-side hemiplegia resulting from cerebral palsy. The medical evidence regarding this time period shows that S.Y. had difficulty "clearing toes" on her left foot; that her gait showed some impairment; that she had "ankle tightness" which was the likely cause of her back pain; that her ankles "hurt more" after she was active; that she needed physical therapy and stretching exercises; that she needed an orthotic; and that she might need a brace for one or both legs. Regarding her left arm, S.Y. "posture[d] slightly in the left arm with decreased arm swing" when she walked and had "decreased rapid alternating movements in the left as opposed to the right

hand."

The record as summarized above establishes that S.Y.'s medically determinable severe impairment of cerebral palsy caused her to experience spacicity, muscle weakness, lack of coordination, jerky locomotion, difficulty with balance, difficulty with gross motor movements such as running, and difficulty with fine motor movement such as handwriting and self-care. 20 C.F.R. § 416.926a(j)(3). These limitations interfered seriously with S.Y.'s functioning – as compared to that of same-aged children who did not have impairments – in her ability to "move at an efficient pace about [her] school, home, and neighborhood"; her "ability to enjoy a variety of physical activities"; and her ability to use household and grooming items independently. 20 C.F.R. § 416.926a(j)(2)(iv). S.Y.'s impairment plainly "interefere[d] seriously" with her "ability to independently initiate, sustain, or complete activities" in the domain of moving about and manipulating objects, resulting in a marked limitation in that domain.

There is no evidentiary support for a finding that S.Y.'s impairment resulted in a less than marked limitation in the domain of moving about and manipulating objects. The fact that S.Y.'s physicians characterized her hemiplegia as "mild" on the spectrum of paralysis does not mitigate its limiting effects on S.Y. as established on this record. Moreover, the two Childhood Disability Evaluation Forms, which the ALJ characterized as "persuasive," provide no support for his decision. As noted, the first, signed by Shakoora Omonuwa, M.D., is dated May 27, 2008, before the commencement of the time period in issue. The Court assigns it no weight. The second such form is dated February 11, 2009 and March 12, 2009 and signed by non-examining consultants physician Mark Bohn, M.D. and psychologist Anthony Goldieri, Ph.D. On this form, under the heading "Moving About and Manipulating Objects," the box for "less than marked" is checked

and the following statement appears: "The child's medical condition produces physical effects that interfere with functioning." There is no indication on the form of what records the consultants considered, except for the reference under "Health and Physical Well-Being" to "ortho exams thru January 2009." There is no indication whether they considered Mr. Hill's January 5, 2009 Teacher Questionnaire. They expressly did not review any medical evidence after January 2009. And they could not have considered Ms. Hughes' May 17, 2010 Teacher Questionnaire or the transcript of the ALJ hearing, which took place on April 27, 2010, both of which post-dated their report. The ALJ wrote that he considered both of these consultants' decisions; that he "finds that their conclusions are consistent with the other substantial evidence of record, including evidence submitted after these consultants made their assessments and the testimony at the hearing"; and that "their opinions are persuasive in that the claimant's impairments do not meet, equal or functionally equal a listed impairment." Apart from the hearing testimony, which is in fact not consistent with the report of Drs. Bohn and Goldieri, the ALJ does not specify what "substantial evidence" is consistent with the report. The Court finds that report of Drs. Bohn and Goldieri, which is conclusory, based on an incomplete record, and not supported by other evidence in the record, does not constitute evidence in support of the ALJ's decision.

To conclude, upon reviewing the entire record and examining the evidence from both sides, *see Williams*, 859 F.2d at 258, the Court holds that there is no reasonable view of the evidence upon which it could be found that S.Y.'s limitation in the domain of moving about and manipulating object during the time in question was not "marked." Thus, as a matter of law, the ALJ's finding that S.Y. had a "less than marked" limitation in moving about and manipulating

objects is not supported by substantial evidence.  Nor is there any basis to conclude that further development of the record would disclose evidence supporting the ALJ's finding in this regard; therefore, remand for further evidentiary proceedings would serve no purpose.  The record, which is adequately developed, conclusively establishes that S.Y. had a marked limitation in moving about and manipulating objects during the time in question; this, in addition to her undisputed marked limitation in interacting and relating with others, establishes that she had marked limitations in two domains, thus establishing functional equivalence to a listed disability.  S.Y. was disabled for purposes of the Social Security Act from November 12, 2008 through July 13, 2010.  *See* 20 C.F.R. § 416.926a(a).

## CONCLUSION

It is therefore

ORDERED that plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is granted; and it is further

ORDERED that defendant's motion for judgment on the pleadings (Dkt. No. 14) is denied; and it is further

ORDERED that the Commissioner's decision is reversed and the matter is remanded for calculation of benefits.

IT IS SO ORDERED.

Date:  July 9, 2014
        Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge